UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JEFFREY SHOREY, ) | |
| ) | |
| *Plaintiff* ) | |
| ) | |
| v. ) | No. 1:11-cv-414-JAW |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| *Defendant* ) | |

### REPORT AND RECOMMENDED DECISION[1]

In this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal, the plaintiff contends that the administrative law judge wrongly failed to include certain limitations in her hypothetical question to the vocational expert, was required to find that he met the criteria of Listing 12.05C, and identified as available to him occupations that were inconsistent with his assigned residual functional capacity ("RFC"). At oral argument, the plaintiff's attorney withdrew the latter issue. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520. 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from status post left foot crush injury, depression, and borderline intellectual functioning, impairments

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner had admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 20, 2012, pursuant to Local Rule 16.3(a)(2)(C),

1

that were severe but which, considered separately or in combination, did not meet of medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, Record at 13; that the plaintiff retained the RFC to perform light work, except that he was only able to sit for six hours and stand and walk for two hours, occasionally bend, balance, stoop, kneel, crouch, and crawl and could never climb ladders, ropes, or scaffolds, must avoid hazards, could understand, remember, and carry out simple, repetitive instructions, and persist at that level of complexity for eight hours a day, five days a week on a consistent basis, could interact appropriately with co-workers and supervisors, could adapt to routine changes in the work setting, but could not work at a job requiring contact with the public, Finding 5, *id.* at 16; that he was unable to perform any past relevant work, Finding 6, *id.* at 20; that, given his age (44 years old on the date of the alleged onset of disability, November 4, 2008, a younger individual), at least high school education, RFC, and work experience, use of the Medical-Vocational Guidelines in Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid"), as a framework for decision-making led to a finding that there existed in the national economy jobs in significant numbers that the plaintiff could perform, Findings 7-10, *id.*; and that, therefore, the plaintiff had not been under a disability, as that term is defined in the Social Security Act, from November 4, 2008, through the date of the decision, May 26, 2011, Finding 11, *id.* at 21.  The Appeals Council declined to review the decision, *id.* at 3-5, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

      The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the

determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Step 3 of the sequential evaluation process, at which step a claimant bears the burden of proving that his or her impairment or combination of impairments meets or equals a listing. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

## I. Discussion

### A. Two-Hour Blocks

The plaintiff contends that a limitation in the administrative law judge's RFC to an ability "to understand, remember and carry out simple, repetitive instructions," without more, is inconsistent with the finding of a state agency psychologist, which was also adopted by a second

state-agency psychologist, specifically because it failed to include a limitation to not more than two-hour blocks for effective attention and concentration. Plaintiff's Itemized Statement of Errors ("Itemized Statement") (ECF No. 10) at 6-13. He describes this as a durational limitation that reflects his inability to maintain attention over an extended period. *Id*.

The record support that the plaintiff cites for this argument consists of reports from Lewis F. Lester, Ph.D., and from David R. Houston, Ph.D. *Id*. at 6 n.1. Dr. Lester's report is dated July 16, 2009, Record at 342, and Dr. Houston's is dated December 29, 2009, *id.* at 367. In Dr. Lester's report, the box labeled "Moderately Limited" is checked for the entries "The ability to maintain attention and concentration for extended periods" and "The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id*. at 340, 341. Dr. Lester's July 16, 2009, report contains the following statement under the heading "functional capacity assessment": "He can be reliable [and] sustain 2-hour blocks at simple tasks at a consistent pace over a normal work day/week." *Id*. at 342.[2] Dr. Houston's comparable conclusion states only that "the assessment of 7-16-09 is affirmed as written." *Id*. at 379.

The plaintiff relies primarily on this court's recommended decision in *Bartlett v. Astrue*, No. 05-23-B-W, 2005 U.S.Dist.LEXIS 16330 (D. Me. Aug. 9, 2005), quoting it correctly. However, jurisprudential developments have overtaken *Bartlett* on this issue of the correct interpretation of the "two-hour block" language that appears in many state-agency psychiatric review technique forms. As Magistrate Judge Kravchuk noted in *Baker v. Social Sec. Admin. Commissioner*, No. 1:10-cv-167-JAW, 2011 WL 1298694 (D. Me. Mar. 31, 2011), in *Bartlett*

---

[2] This is exactly the same statement included in Dr. Lester's evaluation of the plaintiff in *Tibbetts v. Astrue*, No. 1:11-cv-408-DBH, in which an identical argument was advanced.

the plaintiff's past relevant work was at issue with respect to the two-hour block qualifier, *id.* at *5. But, in the instant case, the plaintiff does not dispute the finding that he is unable to perform his past relevant work. Record at 20.

In addition, the following language from *Baker* is inconsistent with the language from *Bartlett* quoted by the plaintiff, and inconsistent with the plaintiff's argument:

> According to the Commissioner's regulations, it is assumed that most jobs permit a morning, lunch, and afternoon break, in roughly two-hour intervals, and the two-hour block qualifier is simply a reminder that substantial gainful activity does not require constant concentration and persistence without interruption throughout the workday. To the Commissioner, a notation about two-hour blocks is simply a term of art, or shorthand reference, to a basic presupposition inherent in the concentration, persistence, and pace analysis. At oral argument, Commissioner's coun[se]l described the concept as an "agency ground rule." This is borne out by the Administration's Program Operations Manual, . . . which instructs administrative claims adjudicators, when considering "stamina" for substantial gainful activity, to "[c]onsider an 8-hour workday and a 5 day work week (with normal breaks, e.g., lunch, morning and afternoon breaks) in evaluating the ability to sustain work-related functions." POMS § DI24510.005(C)(2)(b). Similarly, the Manual explains in relation to mental limitations that the "mental abilities needed for any job" include the ability to understand, remember, and carry out simple instructions by, among other things, maintaining concentration and attention "for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure." POMS § DI25020.0[1]0(B)(2)(a).

2011 WL 1298694 at *4 (citation omitted).

The court in *Butler* noted,

> Like Dr. Lester, many other Disability Determination Services consultants express their RFC opinions about a claimant's ability to sustain concentration and persistence in terms of being able to do so in "two-hour blocks." When they do so, it is not always clear that they are placing a cap on a claimant's ability to concentrate so much as identifying that he can clear the regulatory "two-hour block" hurdle. This case provides a good example. Dr. Lester indicated that Baker "can be reliable and sustain 2-hour blocks at simple tasks at a consistent pace over a normal work day/week." The significance is that Dr. Lester found Baker to be capable of satisfying the mental requirements of simple

5

> work. Dr. Lester found, in effect, that Baker can concentrate on and persist with simple tasks all day, five days per week, understanding that there will be regular breaks. Dr. Lester was not prescribing Baker's maximum duties or his minimum break period. He was simply alluding to a regulatory presumption about the mental demands of simple work.

*Id*. (citation omitted).

Magistrate Judge Kravchuk added,

> The nature of the two-hour blocks qualifier as a presumptive "ground rule" is reflected in the treatment administrative law judges often accord it. For example, it is not uncommon for judges to ignore this qualifier altogether, failing to incorporate it into their RFC findings and, by extension, failing to relay it to the vocational experts for purposes of step 4 and step 5 factual development. In other cases, judges incorporate the qualifier into their RFC findings but treat it as having no significant weight, finding the claimant "not disabled" based on application of the Guidelines at step 5, without relying on testimony from a vocational expert. Although this Court has previously found the two-hour block language to be a factor in remanding cases involving application of the Guidelines at step 5, it has done so in cases involving additional and more significant nonexertional restrictions. To my knowledge, there is no case in this District or any other suggesting that a restriction to simple tasks, two-hour blocks of concentration, would not properly resolve by application of the Guidelines at step 5, assuming no other non-exertional restrictions.

*Id.* at *5 (citations omitted).

I adopted this reasoning in *MacDougall v. Astrue*, No. 2:10-cv-400-GZS, 2011 WL 4566268, at *8 (D. Me. Sept. 29, 2011). It is just as applicable, and determinative, here.

The plaintiff argues that this court should decline to follow what he calls "the alternative approach" adopted in *Baker* for several reasons. *Id*. at 8-13. First, he contends that "the mental RFC assessment process expressly considers *sustained concentration and persistence* to be a material factor." *Id*. at 9-10 (emphasis in original). He suggests that the reasoning in *Baker* "simply makes no sense" in concluding that the two-hour blocks mentioned by the state-agency psychologists do not constitute a durational limitation. *Id*. at 10. To the contrary, Judge

6

Kravchuk's reasoning in *Baker*, set forth in detail above, is both logical and well-supported, as I concluded in *MacDougall*.

The plaintiff's second reason is an assertion that "the Baker Court[] *assum[ed]* that unskilled jobs afford an individual periodic rest periods at 2-hour intervals[,]" and that this assumption is erroneous because "there is no regulatory or statutory requirement that an employer provide breaks at 2-hour intervals." *Id*. (emphasis in original). This argument was made by the plaintiff's attorney in *MacDougall*, Plaintiff's Itemized Statement of Specific Errors (ECF No. 15), *Carol MacDougall v. Commissioner of Social* Security, No. 2:10-cv-400-GZS, at 19-20, and rejected there. The plaintiff here offers no persuasive reason to revisit that fairly recent conclusion.

The third reason proffered by the plaintiff is an assertion that "the Baker court simply made unsupported assumptions about what psychologists and physicians actually intend when they find that a claimant can work for 2-hour blocks of time."[3] Itemized Statement at 12. The plaintiff asserts that these "assumptions" "require evidentiary support in the form . . . of medical and vocational expert testimony." *Id.* To the contrary, Judge Kravchuk made no "assumptions about what psychologists and physicians actually intend."[4] She used the clear language of POMS, which is intended to guide the state-agency psychologists as they fill out the Psychiatric Review Technique Forms, to clarify the meaning of their strikingly similar statements. Other courts agree with Judge Kravchuk's conclusions on this issue. *See, e.g., Hawley v. Astrue*, No. 1:09CV246, 2012 WL 1268475, at *7 (M.D. N.C. Apr. 16, 2012); *McGrath v. Astrue*, Civil No. 10-cv-455-JL, 2012 WL 976026, at *6 (D. N.H. Mar. 22, 2012).

---

[3] Actually, neither reviewing psychologist said that the plaintiff in this case "can work for 2-hour blocks of time." What they said was that the plaintiff "can be reliable [and] sustain 2-hour blocks at simple tasks at a consistent pace over a normal work day/week." Record at 342, 379.

[4] The *Baker* opinion does not deal with any physician's report or evaluation.

## B.  Contact with Co-workers and Supervisors

The plaintiff briefly challenges, Itemized Statement at 13, the administrative law judge's RFC finding that he "is able to interact appropriately with co-workers and supervisors[,]" Record at 16, as inconsistent with the statement in the body of his opinion that "[h]e can have occasional brief and superficial contact with co-workers and supervisors[.]" *Id*. at 19.  He points out that the administrative law judge also failed to include this limitation in her hypothetical question to the vocational expert at hearing.  Itemized Statement at 13.

The administrative law judge's recitation of evidence in connection with her RFC finding includes only two references to the plaintiff's contact with co-workers and supervisors: (1) Donna Gates, Ph.D., offered the opinion in July 2009 that the plaintiff "could adequately relate to coworkers and supervisors[,]" and (2) Dr. Lester and Dr. Houston found that the plaintiff "was able to maintain adequate social functioning but would be moderately limited in interacting with the general[] public."  Record at 19.  Neither of these supports the finding later on the same page of the opinion that the plaintiff is limited to "occasional and brief superficial contact with co-workers and supervisors."  *Id*.

Dr. Lester did find that the plaintiff was moderately limited in the ability to work in coordination with or proximity to others without being distracted by them and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, *id*. at 340-41, although he also found no significant limitation in the plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors, *id*. at 341.  Dr. Houston presumably adopted these findings.  *Id*. at 379.  Dr. Gates, who performed a consultative psychological assessment of the plaintiff in July 2009, concluded that "[h]e likely can relate adequately to coworkers, supervisors, and the public." *Id*. at 315.

The administrative law judge's statement in the body of her opinion that the plaintiff can have "occasional brief and superficial contact with co-workers and supervisors[,]" *id*. at 16, is certainly confusing. However, the hypothetical question that she posed to the vocational expert used almost exactly the same language on this point as does her RFC finding. *Compare id*. at 60 *with id.* at 16. The plaintiff's perfunctory treatment of this issue does not include any suggestion of the manner in which the vocational expert's testimony was allegedly "compromised" by the failure to include in that hypothetical question a limitation to "occasional and brief contact with co-workers and supervisors."

The administrative law judge relied on the vocational expert's testimony responding to her hypothetical question that the jobs of touch up screener of circuit boards, loader semi-conductor dies, and surveillance system monitor would be available to the plaintiff. *Id*. at 21. The description of two of these jobs in the Dictionary of Occupational Titles makes it apparent that the asserted error in the hypothetical question is harmless.

The job description for surveillance system monitor indicates that speaking and signaling to other people is "significant" and that dealing with people is required.[5] *Dictionary of Occupational Titles* ("DOT") (U. S. Dep't of Labor, 4th ed. Rev. 1991) § 379.367-010. However, the descriptions of both loader of semi-conductor dies and touch-up screener do not mention dealing with people and identify the presence of taking instructions from and helping people in a "Not Significant" amount. *Id*. §§ 726.684-110, 726.687-030. Thus, inclusion of a limitation to occasional, brief, and superficial contact with coworkers and supervisors in the administrative law judge's hypothetical question would not have excluded two of the three jobs

---

[5] *But see Amant v. Astrue,* No. CIV S-09-0935 DAD, 2011 WL 66469, at *14 (E.D. Cal. Jan. 10, 2011) (job requiring "speaking-signaling" not inconsistent with RFC limited to occasional work with supervisors, co-workers, or public); *Martin v. Astrue,* No. 3:11-CV-00325-MA, 2012 WL 1597286, at *3 (D. Or. May 7, 2012) (VE testified that surveillance system monitor job consistent with limitation to limited interaction with coworkers).

on which the administrative law judge relied, and any error in omitting that limitation from the question and from the RFC can only have been harmless.[6] *See, e.g., Larsen v. Astrue*, No. 1:10-CV-00936-JLT, 2011 WL 3359676, at *15 (E.D. Cal. Aug. 3, 2011) (jobs with "not significant" level of interaction in DOT appropriate for claimants with RFC specifying limited or occasional coworker contact); *Arsenault v. Astrue*, Civil No. 08-269-P-H, 2009 WL 982225, at *3 (D. Me. Apr. 12, 2009) (and cases cited therein).

### C.  Listing 12.05C

### 1.  Change in Case Law

The plaintiff next contends that the administrative law judge was required to find that he met the criteria of Listing 12.05C, mental retardation.  Itemized Statement at 13-16.

Listing 12.05 provides, in relevant part:

> 12.05 *Mental Retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ***
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

Listing 12.05.

The administrative law judge found that the plaintiff's cognitive impairment did not meet Listing 12.05C because, "while the claimant has a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant

---

[6] At oral argument, the plaintiff's attorney asserted that "in any job there has to be some degree of interaction with supervisors," and that the failure of the vocational expert to discuss this issue requires remand.  However, the medical evidence does not require that the plaintiff have *no* interaction with supervisors.

work-related limitation of function, the evidence does not establish that the claimant experienced deficits in adaptive functioning that initially manifested during the developmental period, which is prior to age 22." Record at 14.

Subsequent to the administrative hearing in this case, this court issued a decision overturning prior case law of this court that construed the meaning of the so-called "capsule definition" of Listing 12.05. *See Libby v. Astrue*, No. 2:10-cv-292-JAW, 2011 WL 2940738 (D. Me. July 19, 2011) (rec. dec., *aff'd* Aug. 24, 2011).

The capsule definition is the first paragraph of Listing 12.05, which provides:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

Listing 12.05. *Libby* overturned prior case law of this court holding that, to satisfy the capsule definition, a claimant need only produce evidence of a qualifying IQ score, which is presumed to have been constant through his or her life absent evidence to the contrary. *See Libby*, 2011 WL 2940738, at *1, *8-*9. The *Libby* court held that the capsule definition requires a separate showing of deficits in adaptive functioning, observing that the focus of the inquiry need not be exclusively on the existence of such deficits prior to age 22 and that an administrative law judge properly can take into account evidence of current adaptive functioning that is inconsistent with a finding of mental retardation. *See id*. at *9-*10.

The *Libby* court upheld an administrative law judge's finding that a claimant had not made a showing sufficient to meet the capsule definition in circumstances in which the claimant had obtained a driver's license, drove regularly, was able to perform household activities of daily living such as cooking, cleaning, helping to take care of her disabled husband, and occasionally babysitting her grandchildren, engaged in leisure/social activities, could read a shopping list and

11

write most of a shopping list, could count change, handle a savings account, and use a checkbook/money order, took care of pets, and was noted by a consulting examiner not to have difficulty understanding or following instructions and to show good persistence and concentration. *See id*. at *11-*12. The record contained conflicting expert evidence as to whether the claimant did or did not meet Listing 12.05C and whether she carried a diagnosis of borderline intellectual functioning or mental retardation. *See id*. at *11. In addition, there was evidence that the claimant was in special education in school, attended school only through the eighth grade, tried but failed to obtain a GED, was told she was reading at a fourth-grade level, got lost when she tried to take buses, was illiterate with a computer, and had difficulty running a cash register at work. *See id*. at *12. The court held that while the evidence did not compel a conclusion that the claimant failed to meet the capsule definition of Listing 12.05C, it supported it – a circumstance in which the court must refrain from substituting its judgment from that of the administrative law judge. *See id*.

In the instant case, the plaintiff contends that applying the new standard stated by *Libby* to his claim would deprive him of the due process of law guaranteed by the Fifth Amendment, because he could not have been aware at the time of his hearing that he needed to present evidence of the existence of adaptive deficits before he was 22 years old.. Itemized Statement at 14. He asserts that a remand is required in order to allow him to present such evidence. *Id*. at 15-16. The sole authority he cites, *Barnes v. Barnhart*, 116 Fed. Appx. 934, 2004 WL 2681465 (10th Cir. Nov. 26, 2004), involved a remand on this issue, *id* at 942, **8, but not for reasons of fairness or a potential constitutional violation. Rather, in that case the court took issue with the commissioner's refusal to adopt a single standard for measuring past deficits in adaptive functioning. *Id*.

As this court has said previously,

> Social Security applicants are afforded both statutory and constitutional due process rights. Such applications have a statutory right, upon request, to reasonable notice and opportunity for a hearing. In addition, applicants for social security disability benefits are entitled to due process in the determination of their claims. At a minimum, the Constitution requires notice and some opportunity to be heard. Above that threshold, due process has no fixed content; it is flexible and calls for such procedural protections as the particular situation demands.
>
> In circumstances in which an administrative law judge has offered what amounts to reasonable notice and opportunity to be heard, there is no underlying due process violation.

*Newcomb v. Astrue*, No. 2:11-cv-02-GZS, 2012 WL 47961, at *7 (D. Me. Jan. 6, 2012) (citations and internal punctuation omitted). Here, the administrative law judge informed the plaintiff's representative that evidence of deficits in adaptive functioning before age 22 would be required. Furthermore, she gave him the opportunity to submit such evidence after the hearing. Record at 66-67. The plaintiff never submitted such evidence.

Certainly, nothing that the Social Security Administration did in this case "deprived [the plaintiff] of an opportunity to be heard at a meaningful time and in a meaningful manner," which is the essence of a due process claim. *Cummins v. Social Sec. Admin.*, 280 Fed. Appx. 634, 635, 2008 WL 2224856, at **1 (9th Cir. May 28, 2008). The regulation at issue was last amended in 2000, *Libby*, 2011 WL 2940738 at *7-*8, so the defendant must be deemed to have had notice of it. His itemized statement makes no attempt to show how knowledge of this court's new interpretation of the applicable Listing would have changed the outcome of his claim, that is, mandated a finding that the listing was met. *See MacDougall,* 2011 WL 4566268, at *2. The plaintiff simply has not made the case that a constitutional violation resulted from this court's change in its interpretation of a Social Security regulation. *See generally Landgraf v. USI Film Prods.*, 511 U.S. 244, 269-70 (1994) (amended statute does not operate retrospectively "merely

13

because it is applied in a case arising from conduct antedating the statute's amendment or upsets expectations based in prior law").

### 2. Evidence of Deficits in Adaptive Functioning

In the alternative, the plaintiff asserts that "evidence of mild mental retardation abounds" in the record, and that the administrative law judge erred in evaluating evidence of deficits in adaptive functioning before his 22nd birthday. Itemized Statement at 16-21. The first assertion is irrelevant, as mere "evidence of mild mental retardation" is not sufficient to meet the Listing. The second assertion can succeed only if the plaintiff can show that such evidence compels a finding that the pre-age 22 evidentiary criterion was met.

In support of the second argument, the plaintiff states that he has "suffered from significant limitations in communication (difficulty in reading and writing), functional academic skills (need for special education, retained in the 6th grade), and work (Dr. Gates found that he had been unemployed as much as he had been employed." *Id*. at 17. The third assertion is irrelevant to the question of the existence of deficits in adaptive functioning before age 22, and all of the evidence cited by the plaintiff in this regard concerns his adult life. *Id*. at 17-19. The same is true of the first assertion. *Id*. He cites no record evidence in support of the second assertion, but merely repeating a single grade in school, or even "needing" special education, is not enough to entitle him to a remand on this issue. *See, e.g., French v. Astrue*, No. 1:10CV541, 2011 WL 2848142, at *4-*5 (N.D. Ohio July 19, 2011); *Inglet v. Astrue*, Civil Action No. 6:08-CV-014-C, 2009 WL 2981908, at *11-*12 (N.D. Tex. Sept. 17, 2009).[7]

The plaintiff has not shown that he is entitled to remand on this basis.

---

[7] At oral argument, the plaintiff's attorney cited the current version of the Diagnostic and Statistical Manual of Mental Disorders (often called "DSM-IV") in support of his argument that "what you are looking at are largely things that are adult activities" in order to determine whether adaptive deficits existed before age 22. However, the commissioner in 2002 specifically declined to use the definitions found in the DSM-IV in connection with Listing 12.05. *Libby*, 2011 WL 2940738, at *8-*9.

### D.  Vocational Expert Testimony

The plaintiff's final argument asserts that "the specific occupations proffered by the VE and adopted by the ALJ are unsuitable for an individual with Mr. Shorey's limitations[,]" because the DOT indicates that the lowest 10 to 33 per cent of the population in general learning ability, verbal aptitude, and numeric aptitude are excluded from these occupations, and his IQ scores place him in the lowest 2.5 per cent of the population.  Itemized Statement at 22-23.

At oral argument, the plaintiff withdrew this argument, which need not be discussed further.

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 13th day of July, 2012.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge